235 P.3d 278

Michael McREYNOLDS, an Arizona resident, Plaintiff/Appellant,

v.

AMERICAN COMMERCE INSURANCE COMPANY, a foreign corporation, Defendant/Appellee.

No. 1 CA–CV 09–0017.

Court of Appeals of Arizona, Division 1, Department A.

July 13, 2010.

Surrano Law Offices by Charles J. Surrano, III, John N. Wilborn, Trinette G. Kent, Phoenix, Attorneys for Plaintiff/Appellant.

The Cavanagh Law Firm, P.A. by Ralph E. Hunsaker, Phoenix, Attorneys for Defendant/Appellee.

## OPINION

BARKER, Judge.

¶ 1 The issue before us is whether an insurer may meet its duty to equally consider settlement offers, when presented with multiple claims in excess of policy limits, by promptly and in good faith interpleading its policy limits and continuing to provide a defense to its insured. Holding this is so, we affirm the summary judgment entered.

### Facts and Procedural History

¶ 2 Michael McReynolds ("McReynolds") appeals the trial court's grant of summary judgment in favor of American Commerce Insurance Co. ("ACIC"). McReynolds sustained severe injuries in an automobile accident with Tanya Raineri ("Raineri") on August 29, 2004. He was treated at Flagstaff Medical Center ("FMC"), formerly Northern Arizona Healthcare, and FMC subsequently filed a lien for $43,603.85.

¶ 3 Raineri was insured by ACIC under a policy with liability limits of $25,000.00 per person. On October 1, 2004, McReynolds demanded ACIC pay the policy limits. Aware that McReynolds' medical bills exceeded the policy limits, ACIC sent a check for $25,000 payable to McReynolds and FMC on October 28, 2004, and enclosed a release of all claims. McReynolds rejected the check, asserting the addition of FMC was a material change from the settlement offer. McReynolds then filed a lawsuit against Raineri on December 10, 2004.

¶ 4 McReynolds served an offer of judgment for the policy limits via U.S. mail on January 6, 2005. See Ariz. R. Civ. P. 68. ACIC sought a legal opinion from counsel it had retained to represent Raineri about

whether, in view of the offer of judgment, it "need[ed] to protect" the FMC lien on any settlement proceeds. Counsel advised ACIC that pursuant to Arizona Revised Statutes ("A.R.S.") section 33–934(a), if ACIC paid $25,000.00 to McReynolds without obtaining a release by FMC, the insurer could leave itself open to liability to FMC for the full amount of its lien, up to the $25,000.00 paid to McReynolds. There was no mention in counsel's opinion letter about whether Raineri also could be liable on the lien. Counsel recommended that ACIC "take steps to insure that the [FMC] Lien [wa]s satisfied." Because there appeared to be a "dispute between Plaintiff's counsel and the hospital over the satisfaction of that lien," counsel recommended ACIC file an interpleader "as being our only avenue to reduce ACIC's exposure to the $25,000.00 policy limits."

¶ 5 Accordingly, instead of responding to the offer of judgment, ACIC filed an interpleader action on March 11, 2005 and paid the policy limits into the court. The interpleader complaint named McReynolds, FMC, and Arizona Health Care Cost Containment System ("AHCCCS"). Eventually, FMC released its liens, AHCCCS defaulted, and the interpleader was dismissed.

¶ 6 The underlying matter went to trial. McReynolds prevailed and secured a judgment against Raineri, for $469,110.17 on October 30, 2006. Raineri subsequently assigned to McReynolds all claims she might have against ACIC in exchange for a covenant not to execute. McReynolds then filed a complaint alleging ACIC acted in bad faith and violated its duty of good faith and fair dealing by failing to give equal consideration to the insured's interests.[1] ACIC filed a successful motion for summary judgment and was awarded attorneys' fees. In granting the summary judgment, the trial court ruled:

[McReynolds] acknowledged that if Defendant had accepted the offer of judgment and the money was paid to Plaintiff in disregard of the medical lien, both Defen-

---

1. Although McReynolds contended that ACIC breached its duty of good faith by, *inter alia,* failing to accept the offer of judgment, it expressly did not contend that ACIC breached the duty

by responding to the pre-litigation settlement offer with a check endorsed jointly to the lienholder.

dant and its insureds, the Raineris, could still be held liable for the medical lien. (Plaintiff's Statement of Facts, Exhibit 5, Tractenberg deposition, pp. 26–27). At this point the Defendant had a Hobson's choice. Accepting the offer of judgment could have exposed its insured to the Flagstaff Medical Center lien and perhaps one from AHCCCS also. Not accepting it and interpleading the funds exposed Defendant to this bad faith claim.

¶ 7 McReynolds timely filed an appeal. We have jurisdiction pursuant to A.R.S. §§ 12–120.21 (2003) and –2101(B) (2003).

### Discussion

¶ 8 We review a grant of summary judgment *de novo*, considering the facts in the light most favorable to the non-moving party. *Andrews v. Blake*, 205 Ariz. 236, 240, ¶ 12, 69 P.3d 7, 11 (2003). Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Ariz. R. Civ. P. 56(c); *see Orme School v. Reeves*, 166 Ariz. 301, 305, 802 P.2d 1000, 1004 (1990). A trial judge "is to apply the same standards as used for a directed verdict." *Orme School*, 166 Ariz. at 309, 802 P.2d at 1008. "[T]he judge should grant summary judgment if, on the state of the record, he would have to grant a motion for directed verdict at the trial." *Id.* However, deciding questions of credibility, weighing of the evidence, and the drawing of reasonable inferences are functions of the jury. *Allstate Indem. Co. v. Ridgely*, 214 Ariz. 440, 444, ¶ 19, 153 P.3d 1069, 1073 (App.2007).

### I.

¶ 9 As we see it, and as McReynolds has pled it, this is a case about whether the insurer had a duty to properly manage the policy limits and, if so, whether the good faith filing of a prompt interpleader satisfies that duty. McReynolds puts it this way:

In this case ... *the issue is* not failure to settle within policy limits, it is *the Appellee's failure to properly manage policy limits. Here, the Appellee was faced with the decision of where to put the policy limits to best defend its insured and limit exposure.* In this case, *it chose to not pay anything* and leave the insured exposed to both the personal injury claim and the medical lien, rather than minimize excess exposure by settling with the Appellant, then litigating both the personal injury claim and the smaller exposure, the medical lien filed by Flagstaff Medical Center.

(Emphasis added.) The key factual assertion to support this alleged breach of duty is the failure to accept McReynolds' offer of judgment. As McReynolds' expert put it:

My ultimate opinion is that ACIC breached the duty of equal consideration to its insureds when it failed to accept an offer of judgment received early in the underlying lawsuit. In doing so, the carrier placed the insureds in a significantly worse position than if the offer had been accepted.

(Emphasis in original.) The insurer, from the outset of the case, had offered the policy limits to McReynolds and the medical lienholder. McReynolds rejected this offer. The assertion that, by rejecting the offer of judgment that would release only one of two claimants, the insurer "chose not to pay anything" is simply wrong. The insurer chose to pay everything by promptly interpleading the entire policy limits into the court and continuing to provide a defense.

¶ 10 Assuming an insurer has some form of a duty to manage policy limits under these circumstances, we consider it (as did McReynolds' expert) to be part of the duty to equally consider settlement offers. *Infra* ¶ 18. There is no Arizona case that directly sets forth the standard applicable when an insurer is faced with multiple claims in excess of its policy limits. For the reasons set forth below, we determine that an insurer satisfies its duty in such situations when it promptly and in good faith interpleads its policy limits into court, naming all known claimants in the action, and continues to provide a defense to its insured.

### II.

### A.

¶ 11 We next turn to the question of whether the undisputed facts show that the

interpleader was promptly filed in the context of this case. As part of our consideration, we examine whether it was filed within the time period available to respond to the offer of judgment.

¶ 12 McReynolds filed his complaint on December 10, 2004, and served an offer of judgment on January 6, 2005. To accept the offer of judgment would have left the insurer and the insured exposed to a claim by the lienholder after having already paid out all the available monies under the policy. A.R.S. § 33–931(A) (2007) (An entity "that maintains and operates a health care institution or provides health care services ... is entitled to a lien for the care and treatment or transportation of an injured person."); A.R.S. § 33–934(A) (2007) (holding that the lienholder must sign to authorize the release of any lien under A.R.S. § 33–931(A) with the result that an insurer and insured remain liable on the lien if the release is not obtained). Instead of accepting the offer of judgment—which was essentially a demand that ACIC pay all its policy limits but not release its insured or itself from all liability flowing from the incident—ACIC filed an interpleader action submitting its policy limits to the court. The interpleader was filed on March 11, 2005.

¶ 13 We note that whether the interpleader action was filed within the time period permissible to respond to the offer of judgment turns on whether Rule 6(a) and (e) of the Arizona Rules of Civil Procedure apply. In answering this question, we turn to the language of the rules themselves. "Rules should be construed to give effect to their plain language, if possible." *Levinson v. Jarrett ex rel. County of Maricopa,* 207 Ariz. 472, 475, ¶ 10, 88 P.3d 186, 189 (App. 2004) (interpreting Arizona Rule of Civil Procedure 15).

¶ 14 We consider first that the offer of judgment in this matter was served via U.S. mail on January 6, 2005. Pursuant to Rule 68(h), "[A]n offer made within 60 days after service of the summons and complaint," as was this one, "shall remain effective for 60 days." Ariz. R. Civ. P. 68(h). Rule 68(c) specifies how to accept an offer of judgment. To accept an offer of judgment, "the offeree

serves written notice that the offer is accepted ... while [an offer] remains effective within the meaning of this Rule." *Id.* 68(c), (d). Thus, pursuant to Rule 68(c) and (h), if ACIC were to accept McReynolds' offer of judgment, it would have had to serve written notice within sixty days of January 6, 2005.

¶ 15 Rule 5(a) specifically provides that our rules of civil procedure as to service of documents or other filings apply to offers of judgment:

> Except as otherwise provided in these rules, every order required by its terms to be served ... and every written notice, appearance, demand, *offer of judgment,* designation of record on appeal, and similar paper shall be served upon each of the parties.

*Id.* 5(a) (emphasis added). Rule 6(a) in turn provides:

> in computing any period of time prescribed or allowed by these rules ... the day of the act, event or default from which the designated period of time begins to run shall not be included.... The *last day of the period* so computed shall be included, unless it is a Saturday, a Sunday or a legal holiday, in which event the period runs until the end of the next day which is not a Saturday, a Sunday or a legal holiday.

*Id.* 6(a) (emphasis added). Thus, by the plain language of Rules 5(a) and 6(a) if the "period of time prescribed or allowed by these rules," i.e. Rule 68(c) and (h), falls on a Saturday, Sunday, or holiday, the effective period to accept an offer is extended "until the end of the next day which is not a Saturday, a Sunday or a legal holiday." *Id.*

¶ 16 Additionally, Rule 6(e) provides:

> Whenever a party has the right or is required to do some act or take some proceedings within a prescribed period after the service of a notice or other paper upon the party and the notice or paper is served by a method authorized by Rule 5(c)(2)(C) or (D), five calendar days shall be added to the prescribed period.

*Id.* 6(e). Applying the language in Rule 6(e) to ACIC's right to respond to the offer of judgment results in the following:

Whenever a party [ACIC] has the right ... to do some act [file a notice of acceptance of offer of judgment pursuant to Rule 68(c)] ... within a prescribed period after the service of a notice [sixty days pursuant to Rule 68(h)] ... and the notice or paper is served by a method authorized by Rule 5(c)(2)(C) ["mailing it via U.S. Mail to the person's last-known address" as occurred here] ... *five calendar days shall be added* to the prescribed period [sixty days].

*Id.* (emphasis added). Thus, the plain language of the applicable rules requires us to apply both Rule 6(a) and (e). Doing so results in the following timeline:

January 6, 2005: Service by U.S. Mail of the offer of judgment on ACIC;

March 7, 2005: Expiration of the sixty-day time period prescribed by Rule 68(c) and (h) in which ACIC may respond;

March 12, 2005: Five additional days pursuant to Rule 6(e) as the notice was mailed; and

March 14, 2005: Two additional days pursuant to Rule 6(a) because March 12, 2005 was a Saturday.

Accordingly, March 14, 2005 was the last day for ACIC to accept McReynolds' offer of judgment.

¶ 17 Perhaps because the language is plain, Arizona courts have not been required to determine whether Rule 6(a) and (e) apply to the time period under Rule 68(c) to accept an offer of judgment. However, we addressed the applicability of another subpart to Rule 6, subpart (b), as applied to Rule 68 offers of judgment in *Digirolamo v. Superior Court*, 173 Ariz. 7, 9, 839 P.2d 427, 429 (App.1991). Rule 6(b) permits an enlargement of a time period specified in the rules by the court when certain conditions are met. Much like the analysis we set forth here, we stated in *Digirolamo* that: "we find no exception for Rule 68 in the text of Rule 6(b). We therefore hold that Rule 6(b) applies to Rule 68." *Id.* Adherence to the plain language in Rule 6(b) was "required to give effect to the plain wording of both rules and to foster their

harmonious application." *Id.* The same is true as to Rule 6(a) and (e). Thus, by filing an interpleader on March 11, 2005, ACIC filed within the time permitted under the rules to respond to McReynolds' offer of judgment.

#### B.

¶ 18 Under Arizona law, we have not expressly recognized a duty on the part of an insurer to manage policy limits. To the extent there is such a duty it is best considered as being part of the established duty to fairly consider settlement offers, giving equal consideration to the insured's interest. *Safeway Ins. Co. v. Guerrero*, 210 Ariz. 5, 9, ¶ 11, 106 P.3d 1020, 1024 (2005) ("The insurer owes the insured an implied contractual 'duty to treat settlement proposals with equal consideration' to its interests and those of an insured.") (quoting *Ariz. Prop. & Cas. Ins. Guar. Fund v. Helme*, 153 Ariz. 129, 137, 735 P.2d 451, 459 (1987)).

¶ 19 The parties cite no Arizona authorities that expressly address the relationship between an insurer's filing of an interpleader and its duty to equally consider settlement offers. Decisions from the Kansas Supreme Court, however, highlight the connection between this duty and the insurer's course of action. In *Club Exchange Corp. v. Searing*, 222 Kan. 659, 567 P.2d 1353, 1356 (1977), the trial court dismissed the insurer's promptly filed interpleader action because the claimants had direct claims against the insured and not the insurer. In reversing dismissal, the supreme court held that "where, as here, an insurance carrier is faced with multiple unliquidated claims, far in excess of its contractual liability, then even in the absence of a 'direct action' statute,[2] interpleader is an appropriate remedy, so long as the insurer acts promptly and in good faith." *Id.* at 1357. In *Farmers Insurance Exchange v. Schropp*, 222 Kan. 612, 567 P.2d 1359, 1366– 67 (1977), which was issued the same day as *Club Exchange*, the supreme court affirmed the jury's finding that the insurer acted negligently or in bad faith in handling competing claims in excess of the policy limits. In

---

**2.** A direct action statute allows claimants to file a lawsuit against the insurer for damages arising

from the insured's conduct. *See Club Exchange,* 567 P.2d at 1356.

analyzing the insurer's actions, the Kansas court endorsed the prompt filing of an interpleader action as one of three ways an insurer can discharge its duty to equally consider settlement offers. *Id.* at 1367. The court stated:

> Under these circumstances, [insurer] could well have notified all of the potential claimants involved that the value of the claims would doubtless exceed policy limits, and invite them or their attorneys to participate jointly in efforts to reach agreement as to the disposition of the available funds. Alternatively, [insurer] could have attempted to settle claims within the policy limits as they were presented. *Or as a third alternative, [insurer] could have promptly and in good faith commenced an interpleader action, and paid its policy limits into court.*

*Id.* (emphasis added). The insurer availed itself of none of these options.

¶ 20 We find merit in all of these approaches suggested in the *Schropp* case. The course of conduct before us here requires us to consider the third approach, the prompt filing of a good faith interpleader. As we explain below, other rules adopted by other courts in circumstances such as these either create substantial uncertainty or risk unfair treatment of claimants.

### C.

¶ 21 The Fifth Circuit case of *Liberty Mutual Insurance Co. v. Davis,* 412 F.2d 475 (5th Cir.1969), is an example of a decision adopting a "first in time" rule as applied to multiple claimants. That case involved an automobile accident where the insured caused injuries to the occupants of two different vehicles. *Id.* at 477. It became clear to the insurer that the injuries to the occupants of one vehicle would exceed the policy limits, leaving no policy monies for claims related to the other vehicle. *Id.* at 477. The claimants of one of the vehicles made a policy limits demand. *Id.* In trying to determine how to respond, the local office of the insurer contacted its home office. *Id.* Its home office indicated that the applicable rule of law in

Florida (where the accident occurred) was "first in time, first in right." *Id.* at 478. Thus, it recommended that if a fair settlement as to the first claimant would consume the policy limits, that settlement should be made regardless of the effect on other claimants. *Id.* The memorandum acknowledged "Professor Keeton's [3] suggestion that in cases involving multiple claims the courts ought to recognize some form of allocation proceeding to determine percentages of available limits of coverage applicable to the several claims," but noted that "no court has yet followed (Professor Keeton's) suggestion." *Id.* The insurer chose not to follow the "first in time, first in right" rule. *Id.* As part of its efforts to bring about a joint settlement, it filed an interpleader action. *Id.*

¶ 22 The court in *Liberty Mutual* allowed a bad faith action to proceed, but the decision did not turn on the insurer's use of the interpleader action. No reference to the filing was made other than the fact that it was filed. *Id.* We can only assume it was not pursued. Indeed, the proceeding at issue in *Liberty Mutual* itself was the insured's bad faith claim, not any interpleader/declaratory action that was filed. *Id.* at 479. Regardless, one basis for the court's decision to allow a bad faith claim to proceed was that the insurer "failed to act in accord with the prevailing law or even to heed the legal advice given by the insurer's home-office counsel that the company would be in no danger if it settled with [the first-in-time claimant]." *Id.* at 482.

¶ 23 As a matter of Arizona law, we decline to adopt the "first in time, first in right" rule as applied to multiple claims to a single insurance policy when, as here, no factual basis exists upon which a meaningful temporal priority can be established. Here, the multiple claims are the lien of the hospital and the injuries of McReynolds. However, in this case it was apparent from the initial settlement offer made by plaintiffs that both the claim for injuries and the lien for medical services were present. Thus, to the extent that *Liberty Mutual* stands for the proposi-

---

**3.** A reference is made to Robert E. Keeton, *Preferential Settlement of Liability–Insurance Claims,* 70 Harv. L.Rev. 27 (1956). *Liberty Mutual,* 412 F.2d at 478 n. 3.

tion that a jury question is presented here—or that a "first in time, first in right" rule should apply—we reject it.

### D.

¶ 24 Other cases that have left to the jury the prospect of a bad faith claim based on failure to settle with one claimant when multiple claims were made either were not presented with or failed to discuss the good faith filing of a prompt interpleader of policy limits by the insurer. *Brown v. U.S. Fid. & Guar. Co.*, 314 F.2d 675, 676–78, 681–82 (2d Cir.1963) (four claimants, two with demands in excess of policy limits; no prompt policy-limits interpleader occurred or was discussed); *Peckham v. Cont'l Cas. Ins. Co.*, 997 F.Supp. 73, 80–81 (D.Mass.1989) (whether insurer "should have settled [claimant's] multi-million dollar personal injury claim for $27,000 [policy limits], without insisting on a husband-wife release from Mrs. Peckham"; no prompt policy-limits interpleader occurred or was discussed); *Dairyland Ins. Co. v. Herman*, 124 N.M. 624, 954 P.2d 56, 65 (1997) (jury question whether insurer satisfied its duty "when it required a release of all claims, including subrogation claims, against its insured as a condition precedent to a policy-limits settlement when there was a substantial likelihood of recovery in excess of policy limits"; no prompt policy-limits interpleader occurred or was discussed).

¶ 25 These cases demonstrate the uncertainty as to any course that the insurer may pursue which will *not* result in a jury trial on the issue of bad faith. For example, in *Brown*, a jury question was presented not because the insurer failed to settle but because it paid its proceeds to some of the claimants too quickly:

Ordinarily, the insurer is taken to task for obstinately refusing to reach a settlement at all, despite the availability of a reasonabl[e] offer from an injured party. Here, however, the insurer has participated, successfully, in settlement negotiations with two of the four claimants; *it is the company's over-eager settlement of the claims in disregard of the possibility of the [in]sured's resulting personal liability which,*

*inter alia, is asserted as evidence of bad faith.*

314 F.2d at 681–82 (emphasis added). The *Peckham* court confirmed the legal minefield that can develop whether an insurer pays or not:

*The insured might be better protected* if the leverage of his coverage is applied to at least some of the claims so as to reduce his ultimate judgment debt.

*On the other hand, if the insured's coverage is needlessly exhausted on one claim, when coverage might cancel out other claims as well, the insured may suffer from its insurer's readiness to settle.*

997 F.Supp. at 81 (emphasis added) (citation omitted). Based on these holdings, competing claims in excess of policy limits may result in a jury question *regardless* of the course an insurer pursues.

¶ 26 We think the favored approach to managing multiple claims in excess of the policy limits must include some provision for certainty to insureds, insurers, and litigants short of submitting each case to a jury. In that regard, as a matter of Arizona law, we hold that (1) the prompt, good faith filing of an interpleader as to all known claimants with (2) payment of the policy limits into the court and (3) the continued provision of a defense for the insured as to each pending claim, acts as a safe harbor for an insurer against a bad faith claim for failure to properly manage the policy limits (or give equal consideration to settlement offers) when multiple claimants are involved and the expected claims are in excess of the applicable policy limits.

¶ 27 Applying this rule to the undisputed facts before us, ACIC was entitled to summary judgment. The interpleader was promptly filed. There was an existing good faith dispute as to multiple parties with potential claims in excess of the policy limits. Acceptance of the offer of judgment would not have extinguished the liability of the insurer or insured even though such an acceptance would have required the entire policy proceeds to be paid. Additionally, ACIC continued to provide a defense. Thus, the requirements of the rule are met. The avail-

ability of the safe harbor is especially applicable here as ACIC was willing at the outset to pay the policy limits.

## III.

¶ 28 McReynolds also points to ACIC's conduct prior to the filing of the interpleader action including ACIC's failure to negotiate with FMC and the advice given by insured's counsel.[4] McReynolds asserts, under *Zilisch v. State Farm Mutual Automobile Insurance Co.*, 196 Ariz. 234, 995 P.2d 276 (2000), that this conduct is sufficient to maintain a cause of action for bad faith in spite of the prompt, good faith interpleader. We disagree.

¶ 29 This is not a case like *Zilisch*. Indeed, as to the facts of consequence, these two cases could not be more different. In *Zilisch*, the policy had a $100,000.00 limit. 196 Ariz. at 236, ¶ 3, 995 P.2d at 278. In December of 1991, the claimant made a policy limits demand on the insured based on permanent damage to her left eye. *Id.* at ¶ 4. Six months later after further medical information confirmed that the injuries were permanent, the policy limits demand was reoffered. *Id.* at ¶ 7. In either October or November of 1992, State Farm, the insurer, rejected the policy limits demand and offered a settlement in the amount of $55,000.00. *Id.* at ¶¶ 10–11. This offer was rejected in that same time period. *Id.* at ¶ 11. The matter proceeded to arbitration, where an award of more than twice the policy limits was entered. *Id.* at 237, ¶ 12, 995 P.2d at 279. State Farm then paid the policy limits of $100,000.00, fourteen months after the initial demand and an arbitration award of more than twice the amount of the policy limits had been entered. *Id.*

¶ 30 In the case before us, the policy limits were tendered to the court within the time period for acceptance of the initial offer of judgment. Additionally, the insurer continued to provide a defense. Under the facts in *Zilisch*, the insurer could not even begin to

qualify for the potential "safe harbor" we identify here.

### Conclusion

¶ 31 For the reasons set forth above, we affirm the grant of summary judgment in favor of ACIC.

CONCURRING: DIANE M. JOHNSEN, Presiding Judge and MAURICE PORTLEY, Judge.

---

4. The conduct of the *insured's* counsel in evaluating coverage questions on behalf of the *insurer* while representing the insured is problematic. *See Safeway Ins. Co.*, 210 Ariz. at 9, ¶ 11, 106 P.3d at 1024. At a minimum, the insurer should have looked to separate counsel for coverage

advice. However, because ACIC tendered its policy limits to McReynolds and FMC at the outset, then promptly filed an interpleader and continued to provide a defense, the errant advice and lack of negotiations with FMC were of no consequence.