251 P.3d 421 (2011)
LENNAR CORPORATION, a Delaware corporation; Lennar Communities Development, Inc., a Delaware corporation; Lennar Homes Of Arizona, Inc., an Arizona corporation, Counterclaimants/Appellants,
v.
TRANSAMERICA INSURANCE COMPANY (now known as TIG Insurance Company), and United States Fidelity & Guaranty Company, Counterdefendants/Appellees.
Lennar Corporation, a Delaware corporation; Lennar Communities Development, Inc., a Delaware corporation; Lennar Homes of Arizona, Inc., an Arizona corporation, Third-Party Plaintiffs/Crossclaimants/Appellants,
v.
United States Fire Insurance Company, Cross-Claim Defendant/Appellee.
No. 1 CA-CV 10-0141.
Court of Appeals of Arizona, Division 1, Department B.
April 14, 2011.
*423 Fennemore Craig, P.C. by Timothy Berg, John J. Balitis, Jr., Theresa Dwyer-Federhar, Phoenix, and Payne & Fears LLP by Scott S. Thomas, pro hac vice, J. Kelby Van Patten, pro hac vice, Irvine, CA, Attorneys for Counterclaimants, Crossclaimants, Third-Party Plaintiffs/Appellants.
*424 Burke Panzarella Rich, by Thomas P. Burke, II, Elizabeth L. Fleming, Phoenix, and Harrington, Foxx, Dubrow & Canter, LLP by Mark. W. Flory, pro hac vice, Michael C. Denlinger, pro hac vice, Los Angeles, CA, Attorneys for Counterdefendants/Appellees. TIG Insurance Co. and United States Fidelity & Guaranty Co.
Broening, Oberg, Woods & Wilson, P.C. by Terrence P. Woods, Marilyn D. Cage, Phoenix, Attorneys for Cross-Claim Defendant/Appellee, United States Fire Insurance Co.

OPINION
JOHNSEN, Judge.
¶ 1 The insurers in this appeal argue we should affirm their summary judgment on the insured's claim for breach of the covenant of good faith and fair dealing because the insurers sought a declaratory judgment on coverage and obtained a ruling, later reversed, in their favor. We reverse because questions of material fact prevent summary judgment in the insurers' favor. We also hold that under the circumstances presented, an insurer that seeks a judicial interpretation of a disputed policy term may not ignore its claims-handling responsibilities while the declaratory judgment action proceeds.

FACTS AND PROCEDURAL HISTORY
¶ 2 The insureds in this case are a group of related companies, Lennar Corporation, Lennar Communities Development, Inc. and Lennar Homes of Arizona, Inc. (collectively "Lennar"). In the early 1990s, Lennar oversaw the development of 105 homes in a project in Glendale called Pinnacle Hill. Soon after homeowners moved in, they began to complain about construction problems. Lennar made some repairs, but the complaints continued. According to our record, all or nearly all of the homes required repairs. In September 1998, several homeowners filed suit and others threatened litigation.
¶ 3 In December 1998, Lennar tendered claims under commercial general liability policies issued to it by Transamerica Insurance Company ("TIG"), United States Fidelity & Guaranty Company ("USF & G"), United States Fire Insurance Company ("U.S. Fire") and other insurers. In October 2000, TIG and USF & G filed a complaint seeking a declaratory judgment that they owed no duty to defend or indemnify Lennar. Lennar answered, counter-claimed and brought a cross-claim against U.S. Fire and other insurers, alleging breach of contract and breach of the duty of good faith and fair dealing.
¶ 4 In July 2003, the superior court granted summary judgment in favor of the insurers, dismissing all of Lennar's claims based on the court's conclusion that defects in the homes did not constitute an "occurrence" within the meaning of the policies.[1] This court reversed, holding the homeowners allegations of damage resulting from faulty construction were sufficient to allege an "occurrence" under the policies. Lennar Corp. v. Auto-Owners Ins. Co. (Lennar I), 214 Ariz. 255, 265, ¶ 33, 151 P.3d 538, 548 (App.2007).
¶ 5 About a year after our opinion issued, the insurers again moved for summary judgment on Lennar's bad-faith claim. Their motion rested solely on the proposition that, as a matter of law, the superior court's initial ruling in their favor on the occurrence issue established that the insurers had a reasonable basis for denying coverage. The superior court adopted the insurers' analysis and again entered summary judgment in their favor on the bad-faith claim.
¶ 6 Lennar timely appealed. Now, more than 15 years after its customers began complaining about defects in their homes, Lennar has settled with all of the homeowners and with all but three of its insurers. We have jurisdiction of the appeal pursuant to Article 6, Section 9, of the Arizona Constitution and Arizona Revised Statutes ("A.R.S.") section 12-2101(B) (2003).

DISCUSSION

A. Standard of Review.
¶ 7 Summary judgment is appropriate when the pleadings, depositions, answers to *425 interrogatories, affidavits and admissions on file show there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Ariz. R. Civ. P. 56(c). We review a grant of summary judgment de novo, considering the evidence and all reasonable inferences in the light most favorable to the non-moving party. Andrews v. Blake, 205 Ariz. 236, 240, ¶ 12, 69 P.3d 7, 11 (2003).

B. An Insurer's Covenant of Good Faith and Fair Dealing.
¶ 8 In every insurance contract is an implied covenant of good faith and fair dealing, the breach of which is a tort. Deese v. State Farm Mut. Auto. Ins. Co., 172 Ariz. 504, 506, 838 P.2d 1265, 1267 (1992). The covenant of good faith and fair dealing requires an insurer "to play fairly with its insured." Zilisch v. State Farm Mut. Auto. Ins. Co., 196 Ariz. 234, 237, ¶ 20, 995 P.2d 276, 279 (2000) (quoting Rawlings v. Apodaca, 151 Ariz. 149, 154, 726 P.2d 565, 570 (1986)). The insurer owes the insured "some duties of a fiduciary nature," including "[e]qual consideration, fairness and honesty." Zilisch, 196 Ariz. at 237, ¶ 20, 995 P.2d at 279 (quoting Rawlings, 151 Ariz. at 155, 726 P.2d at 571).
¶ 9 Our supreme court in Zilisch described some of the obligations the duty of good faith imposes on an insurer:
The carrier has an obligation to immediately conduct an adequate investigation, act reasonably in evaluating the claim, and act promptly in paying a legitimate claim. It should do nothing that jeopardizes the insured's security under the policy. It should not force an insured to go through needless adversarial hoops to achieve its rights under the policy. It cannot lowball claims or delay claims hoping that the insured will settle for less. Equal consideration of the insured requires more than that.
Zilisch, 196 Ariz. at 238, ¶ 21, 995 P.2d at 280.[2] When there is a coverage question, an insurance company breaches its duty of good faith and fair dealing if it "intentionally denies, fails to process or pay a claim without a reasonable basis." Id. at 237, ¶ 20, 995 P.2d at 279 (quoting Noble v. Nat'l Am. Life Ins. Co., 128 Ariz. 188, 190, 624 P.2d 866, 868 (1981)). While an insurer may challenge a claim that is fairly debatable, "its belief in fair debatability `is a question of fact to be determined by the jury.'" Zilisch, 196 Ariz. at 237, ¶ 20, 995 P.2d at 279 (quoting Sparks v. Republic Nat'l Life Ins. Co., 132 Ariz. 529, 539, 647 P.2d 1127, 1137 (1982)).

C. The Doctrine of Law of the Case Does Not Require Reversal of the Summary Judgment.
¶ 10 Our opinion in Lennar I for the most part focused on the meaning of the term "occurrence" in the Lennar policies. After holding that damages resulting from alleged construction defects could constitute an occurrence, we reversed entry of judgment in favor of the insurers on the contract claims and remanded for further proceedings. 214 Ariz. at 270, ¶ 62, 151 P.3d at 553.
¶ 11 Only one paragraph of our 62-paragraph decision addressed Lennar's bad-faith claim:
Although the trial court granted summary judgment as to the insurers on both Lennar's breach of contract and bad faith claims, it offered no explanation as to the reasons underlying its judgments. We presume that, consistent with the insurers' arguments below, it found that if there was no duty to indemnify or defend, the insurers could not have acted in bad faith in refusing to indemnify or defend. Because we reverse the trial court's summary judgment in favor of the insurers on the breach of contract claim, in the absence of an independent basis to sustain the trial court's summary judgment on the bad faith claim, we similarly reverse that summary judgment.
Id. at ¶ 59 (footnote omitted). Lennar argues this appeal is governed by our holding *426 that because there was no "independent basis to sustain" dismissal of the bad-faith claim, the insurers were not entitled to summary judgment on that claim. Lennar contends that ruling constitutes the law of the case in this appeal.
¶ 12 The doctrine of law of the case "is generally held to be a rule of policy and not one of law." Dancing Sunshines Lounge v. Indus. Comm'n of Ariz., 149 Ariz. 480, 482, 720 P.2d 81, 83 (1986). It provides that once an appellate court has decided a legal issue, that decision is the law of that case in subsequent superior court proceedings and the decision will not be reconsidered in a second appeal, provided the facts, issues and evidence are substantially the same as those upon which the first decision rested. State v. Bocharski, 218 Ariz. 476, 489, ¶ 60, 189 P.3d 403, 416 (2008); Kadish v. Ariz. State Land Dep't, 177 Ariz. 322, 327, 868 P.2d 335, 340 (App.1993). The doctrine is not absolute; it "does not have the same conclusive effect as the doctrine of res judicata." Id. "[I]t should not be strictly applied when it would result in a manifestly unjust decision." Dancing Sunshines Lounge, 149 Ariz. at 482, 720 P.2d at 83.[3]
¶ 13 In Lennar I we reversed summary judgment on Lennar's bad-faith claim because we presumed the superior court had ruled based solely on its conclusion that the insurers had no duty to indemnify or defend Lennar. Lennar I, 214 Ariz. at 270, ¶ 59, 151 P.3d at 553. The parties did not brief in that appeal whether reinstatement of the contract claims would require reinstatement of the bad-faith claim; indeed, Lennar's briefs did not touch on bad faith. Under the circumstances, we decline to apply the doctrine of law of the case to our reversal in Lennar I of the dismissal of the claim for breach of the duty of good faith and fair dealing.

D. An Erroneous Grant of Summary Judgment Does Not Conclusively Establish That Coverage Is Fairly Debatable.
¶ 14 The sole basis for the insurers' motion for summary judgment on Lennar's bad-faith claim was the superior court's prior holding that the policies did not cover construction defects. Noting that the duty of good faith allows an insurer to challenge a claim when it has a reasonable basis for doing so, the insurers argued the prior ruling (the ruling we reversed in Lennar I) meant that, as a matter of law, Lennar's coverage claims were fairly debatable. See Zilisch, 196 Ariz. at 237, ¶ 20, 995 P.2d at 279 (although insurer commits bad faith by intentionally denying a claim "without a reasonable basis," it "may challenge claims which are fairly debatable").
¶ 15 The insurers cite Tobel v. Travelers Insurance Company, 195 Ariz. 363, 988 P.2d 148 (App.1999), and Aetna Casualty & Surety Company v. Superior Court, 161 Ariz. 437, 778 P.2d 1333 (App.1989), for the proposition that if a superior court erroneously concludes there is no coverage, the claim's "fair debatability" is established as a matter of law. Neither case compels that conclusion, however.
¶ 16 Tobel was an insured's appeal of a summary judgment dismissing his coverage claim. Although the insured did not appeal from the dismissal of his bad-faith claim, we addressed his request to conduct discovery on that claim, noting that "the issue of coverage in this case was `fairly debatable,' as borne out by the fact that this court and the trial court reached differing conclusions." 195 Ariz. at 371, ¶ 45, 988 P.2d at 156. In Aetna, this court reversed the denial of an insurer's motion for summary judgment on a claim for breach of the duty of good faith. 161 Ariz. 437, 440, 778 P.2d 1333, 1336. On appeal, we rejected the argument that the insurer breached by failing to investigate the claim because the insured failed to cite any material fact the insurer would have discovered if it had investigated. Id. We observed, "Regardless of the eventual outcome of this question on appeal, the fact that two courts agreed that plaintiff was not covered *427 by the policy, after hearing the arguments of counsel for both parties, clearly demonstrates that the insurance company had a reasonable basis for denying the claim." Id.
¶ 17 In neither decision was the analysis the insurers cite necessary to the court's holding. In neither decision did the court hold that the prior (erroneous) ruling meant that the claim was fairly debatable as a matter of law. Our reluctance to adopt such a rule accords with other courts that have rejected the assertion that an erroneous ruling in favor of an insurer on coverage establishes as a matter of law that the insurer acted reasonably in denying the claim. See EOTT Energy Operating Ltd. P'ship v. Certain Underwriters at Lloyd's of London, 59 F.Supp.2d 1072, 1080 (D.Mont.1999); Filippo Indus., Inc. v. Sun Ins. Co. of New York, 74 Cal.App.4th 1429, 88 Cal.Rptr.2d 881, 883 (1991) ("We certainly have great faith in the sagacity and reasonableness of trial judges, but we decline to impute infallibility to any court, trial or appellate."); Robinson v. State Farm Fire & Cas. Co., 583 So.2d 1063, 1066 (Fla.Dist.Ct.App.1991) ("It makes no sense that an insurer who asserts a coverage issue that, for any reason, withstands summary judgment, but ultimately fails, would be excused from all of the good faith obligations imposed on the insurer who admits coverage.").

E. Genuine Issues of Material Fact Preclude Summary Judgment.

1. The "fair debatability" of an insurer's coverage position.
¶ 18 An insurer breaches its duty of good faith and fair dealing if it "intentionally. . . fails to process or pay a claim without a reasonable basis." Zilisch, 196 Ariz. at 237, ¶ 20, 995 P.2d at 279. This means an insured suing for bad faith based on a denial of coverage must prove not only that the insurer lacked an objectively reasonable basis for denying the claim; the insured also must prove the insurer knew it lacked an objectively reasonable basis for denying the claim. The insurers argue the circumstances in this case (including the initial superior court ruling) establish as a matter of law that they had a reasonable basis for failing to defend or pay Lennar's claims.
¶ 19 Whether the reasonableness of an insurer's coverage position may be determined as a matter of law depends on the nature of the dispute and other factors, including whether extraneous evidence bears on the meaning of the contested policy language. The fair debatability of the insurers' coverage positions in this case turns in large part on the interpretation of standard language in the form policies the insurers issued to Lennar. The interpretation of an insurance contract generally is a question of law for the court. See Sparks, 132 Ariz. at 534, 647 P.2d at 1132. But when the policy is reasonably susceptible to more than one meaning, the court may allow extrinsic evidence, and when that evidence "establishe[s] controversy," the question properly is given to the jury. Taylor v. State Farm Mut. Auto. Ins. Co., 175 Ariz. 148, 159, 854 P.2d 1134, 1145 (1993); cf. Gipson v. Kasey, 214 Ariz. 141, 143, ¶ 9, n. 1, 150 P.3d 228, 230 (2007) (in negligence action, jury normally determines whether defendant breached duty to exercise reasonable care).
¶ 20 The superior court's initial determination that the damages Lennar sought did not relate to an "occurrence" within the meaning of the policies may be relevant to the reasonableness of the insurers' failure to admit coverage. Likewise relevant, of course, is this court's contrary conclusion in Lennar I. When, as here, the policies are written on a standard industry form, evidence of how these insurers, other insurers and other courts have interpreted the policy language in other cases may bear on whether these insurers acted reasonably in disputing coverage. See Rawlings, 151 Ariz. at 158, 726 P.2d at 574 (insurer's failure to comply with "industry custom" may be relevant to its alleged bad faith).
¶ 21 Applying these principles, we conclude that whether the insurers acted reasonably in challenging Lennar's claims based on the meaning of "occurrence" in the policies was a question for the jury to resolve. On remand, in addition to the policy itself, the superior court may decide to admit extrinsic evidence such as judicial decisions interpreting the *428 policy language and evidence of the understandings of these insurers and of the insurance industry in general concerning the meaning of the disputed policy language.[4]
¶ 22 Beyond the objective reasonableness of the insurers' coverage positions is the issue of their subjective beliefs about the coverage positions they took. Our supreme court has held that an insurer's "belief in fair debatability `is a question of fact to be determined by the jury.'" Zilisch, 196 Ariz. at 237, ¶ 20, 995 P.2d at 279 (citation omitted). In responding to the insurers' motion for summary judgment, Lennar offered evidence that some of the insurers knew homebuilders that bought their commercial general liability policies intended to obtain coverage for damages resulting from construction defects. On remand, this evidence may bear on the insurers' subjective belief in the reasonableness of the coverage positions they took. Also relevant may be evidence of prior positions these insurers have taken in similar cases and these insurers' knowledge of judicial interpretations of the policy language in other cases and their knowledge of positions other insurers or industry groups have taken in other similar cases.

2. Breach of the duty to reasonably handle the claim.
¶ 23 Lennar also argues issues of fact remain about whether the insurers reasonably investigated and otherwise handled its claims. The insurers argue they may not be liable for failing to properly investigate or otherwise handle Lennar's claims as long as the "occurrence" issue was unresolved. They contend that because Lennar has settled with all of the homeowners, its bad-faith claim effectively has been converted to a first-party claim that should be evaluated only by whether coverage was fairly debatable. See Clearwater v. State Farm, Mut. Auto. Ins. Co., 164 Ariz. 256, 258, 792 P.2d 719, 721 (1990) (distinguishing first-party from third-party coverage).[5]
¶ 24 Our supreme court, however, has rejected the notion that even in a first-party context, an insurer's duty of good faith and fair dealing requires only that it refrain from challenging a claim that is not fairly debatable:
[W]hile fair debatability is a necessary condition to avoid a claim of bad faith, it is not always a sufficient condition. The appropriate inquiry is whether there is sufficient evidence from which reasonable jurors could conclude that in the investigation, evaluation, and processing of the claim, the insurer acted unreasonably and either knew or was conscious of the fact that its conduct was unreasonable.
Zilisch, 196 Ariz. at 238, ¶ 22, 995 P.2d at 280. We draw from Zilisch the principle that in the usual case, an insurer that objects to coverage may not disregard its normal claims-handling responsibilities while the coverage issue remains unresolved.
¶ 25 TIG and USF & G further argue they fulfilled their good-faith duty by seeking a declaratory judgment on the occurrence question. They cite no authority, however, for the proposition that an insurer necessarily fulfills its duty of good faith and fair dealing if it files a declaratory judgment action on a disputed policy interpretation issue but otherwise disregards its continuing claims-handling obligations. While an insurer in the usual case does not breach its duty of good faith by seeking a judicial determination of the meaning of an ambiguous policy term, the insurer's obligations under Zilisch continue in the meantime. Although the law may relieve an insurer of the duty to investigate when the facts of the claim are immaterial to the insurer's coverage position, see Young v. Allstate Ins. Co., 296 F.Supp.2d *429 1111, 1121 n. 14 (D.Ariz.2003), this is not such a case. See generally Deese, 172 Ariz. at 507, 838 P.2d at 1268; Egan v. Mut. of Omaha Ins. Co., 24 Cal.3d 809, 169 Cal.Rptr. 691, 696, 620 P.2d 141 (1979) ("[A]n insurer cannot reasonably and in good faith deny payments to its insured without thoroughly investigating the foundation for its denial.").
¶ 26 The saga of this litigation illustrates the injury an insured may suffer when (as Lennar alleges here) an insurer sues over the meaning of a disputed policy term and effectively ignores its obligation to investigate the claim during ensuing protracted legal proceedings. Beyond the meaning of "occurrence," the insurers contend other coverage questions remain about the nature of the defects that plagued the Pinnacle Hill homes and when damage resulted from those defects. In response to the insurers' motions for summary judgment, Lennar offered evidence the insurers breached their duty to investigate those issues and handle its claims in a reasonable fashion while the declaratory judgment action proceeded.
¶ 27 Lennar offered evidence that it kept TIG and USF & G apprised of homeowners' allegations of poor construction, expert witnesses' conclusions that construction defects contributed to the damage, and projected claims expenses. Lennar repeatedly invited TIG and USF & G to discuss the experts' findings and potential settlements. As early as April 1999, Lennar advised TIG and USF & G that projected costs of the claims would exceed their self-insured retentions and thereby implicate coverage.
¶ 28 TIG and USF & G did not offer any amount toward Lennar's defense or settlement payments, and instead advised Lennar that "the likelihood of coverage under the. . . policies appears remote," in part due to a policy exclusion of claims relating to soil subsidence. But the insurers concede they did not independently investigate the homeowners' claims. According to evidence Lennar offered on summary judgment, despite compelling evidence that construction defects unrelated to soil were responsible at least in part for the damage to the Pinnacle Hill homes, TIG and USF & G insisted that "the alleged damages were caused solely by soil subsidence" and "at no time has Lennar . . . presented any evidence that the claimed damages were not, in fact, caused by soil subsidence."[6]
¶ 29 The U.S. Fire policy imposed on the insurer the "right and duty to defend any `suit'" seeking "damages because of . . . `property damage' to which" the policy applied. In connection with that obligation, the policy provided, "We may at our discretion investigate any `occurrence' and settle any claim or `suit' that may result." On appeal, U.S. Fire cites an endorsement to the policy that stated, "Our duty to investigate, settle, and defend claims or `suits' no longer applies.'" U.S. Fire argues the endorsement relieved it of any obligation an insurer may have under Zilisch to perform a reasonable investigation of an insured's claim. We do not agree.
¶ 30 Contrary to U.S. Fire's argument, the endorsement related only to the right to investigate that the policy formerly granted U.S. Fire in connection with its "right and duty to defend" a suit against the insured. The endorsement did not purport to limit, nor could it limit, the obligation the law imposes on U.S. Fire to reasonably investigate Lennar's indemnity claim for damages Lennar incurred beyond its self-insured retention in resolving the homeowners claims.[7]
*430 ¶ 31 In sum, Lennar's evidence concerning the insurers' claims handling, none of which the insurers disputed, created genuine issues of material fact that prevented entry of summary judgment in favor of the insurers on Lennar's claim for breach of the covenant of good faith and fair dealing.

CONCLUSION
¶ 32 For the foregoing reasons, we reverse summary judgment in the insurers' favor and remand for further proceedings consistent with this decision. Lennar has asked for its attorney's fees pursuant to A.R.S. § 12-341.01 (2003). We decline the request; the superior court, however, may consider the fees incurred in this appeal in determining whether and how much to award the prevailing party or parties following final resolution of this case. We award Lennar its costs on appeal contingent on its compliance with Arizona Rule of Civil Appellate Procedure 21.
CONCURRING: DONN KESSLER, Presiding Judge and SHELDON H. WEISBERG, Judge.
NOTES
[1] Lennar stipulated to entry of judgment in favor of U.S. Fire after the court entered summary judgment in favor of the other insurers.
[2] The insurers argue Zilisch does not apply here because coverage was undisputed in that case. Although there was no dispute in Zilisch that the claim was covered, the supreme court concluded an insurer may be liable for improper claims handling even when coverage is fairly debatable. 196 Ariz. at 238, ¶ 22, 995 P.2d at 280; see infra ¶ 24.
[3] "[T]he law of the case doctrine is a procedural rule which is generally followed, not because the court is without power to reconsider a former determination, but because the orderly processes of judicial procedure require an end to litigation." State v. Maxwell, 19 Ariz.App. 431, 435, 508 P.2d 96, 100 (1973).
[4] On appeal, the insurers do not argue they acted reasonably as a matter of law in raising other questions about coverage, including questions concerning the nature of the defects in the homes and the cause and timing of those defects. On remand, the superior court may consider whether the reasonableness of the insurers' positions as to those issues presents other issues of fact relevant to Lennar's bad-faith claim.
[5] In a third-party context, "the insurer exclusively controls settlement and the insured bears a disproportionate share of the risk if the insurer fails to accept a reasonable settlement offer within policy limits." Clearwater, 164 Ariz. at 260, 792 P.2d at 723.
[6] TIG and USF & G relied on a report by the homeowners' expert in October 1999 that concluded expansive soils were the sole cause of damage to the homes. According to the record, however, the insurers knew that the author of that report testified less than two months after the report issued that he had identified other construction defects unrelated to soil. Although Lennar's experts opined that poor workmanship contributed to the damage and the insurers concede they had no evidence that poor construction was not the cause of the damage, TIG and USF & G's claims representative dismissed Lennar's position because, as the insurers put it, "the information [they] were getting was coming from Lennar."
[7] At oral argument, U.S. Fire's counsel argued his client could not be liable for bad faith because Lennar had yet to "send a bill" for the damages for which it contends it has coverage. Our record does not contain evidence allowing us to resolve that issue.