# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

Opinion Number: _____

Filing Date: January 21, 2015

**NO. 32,171**

**PROGRESSIVE CASUALTY**
**INSURANCE COMPANY,**

       Plaintiff-Appellant,

v.

**NANCY COLLEEN VIGIL and**
**MARTIN VIGIL,**

       Defendants-Appellees.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Alan M. Malott, District Judge**

O'Brien & Padilla, P.C.
Daniel J. O'Brien
Albuquerque, NM

Horvitz & Levy LLP
Lisa Perrochet
Andrea M. Gauthier
Encino, CA

for Appellant

Santillanes & Neidhardt, P.C.
Janet Santillanes
Olivia Neidhardt
James T. Roach
Albuquerque, NM

for Appellees

**OPINION**

**GARCIA, Judge.**

{1}     Plaintiff, Progressive Casualty Insurance Company (Progressive), appeals from the judgment entered in favor of Defendants, Nancy Colleen Vigil (Colleen) and her son, Martin Vigil (Martin), (collectively, the Vigils) following a jury trial. Progressive filed this declaratory judgment action against the Vigils, asking the district court to determine that the Vigils had no coverage on the day that Martin was involved in an accident, and the Vigils counterclaimed for bad faith. The jury found that the Vigils had coverage on the day of the accident and that Progressive acted in bad faith in not providing coverage. The jury awarded the Vigils $37,000 in compensatory damages and $11.7 million in punitive damages for their bad faith claim. The district court then awarded the Vigils about $1.4 million in attorney fees and $35,000 in costs under NMSA 1978, Section 39-2-1 (1977).

{2}     Because we conclude that the district court erred when it excluded certain evidence from being admitted at trial, we reverse the judgment as to the bad faith claim. We vacate the $37,000 compensatory damages award, the $11.7 million punitive damages award, the $1.4 million attorney fees award, the $35,000 costs award, and we remand to the district court for a new trial on the issue of bad faith. We affirm the verdict in favor of the Vigils regarding insurance coverage under the

policy.

**BACKGROUND**

{3}     In the fall of 2002, Colleen and Martin were insured under a Progressive automobile insurance policy. In late September 2002, Colleen called Progressive to add a car to the policy. Believing the policy premium was due on October 3, 2002, Colleen called Progressive to pay the premium over the telephone. During this call, Progressive told Colleen that the premium was not due until October 15, 2002. She paid the premium on October 3 anyway. She received a notice in the mail from Progressive showing that the payment she made on October 3 was due on October 15. She later received another notice from Progressive stating that her policy would renew on November 3. Colleen testified that she called Progressive because "[t]he date was confusing" and the automated system told her that her next premium was due on November 15. She did not pay the premium by November 3.

{4}     On November 4, Martin got into a car accident in which one passenger was killed and another seriously injured. Colleen testified that on November 4, after the accident, she called Progressive's billing department to check on her coverage and Progressive told her that she was covered through November 15. She paid the policy premium over the telephone during that call and then she reported Martin's accident

to Progressive's claims department. About two weeks later, Progressive determined that the Vigils did not have coverage on the date of the accident because the policy had lapsed on November 3. The Vigils disagreed and much of the litigation between the parties has involved this dispute.

{5} In December 2002, Progressive filed this action in the district court seeking a declaration that the Vigils did not have insurance coverage on the date of the accident. The Vigils filed a counterclaim against Progressive alleging bad faith, among other claims. While the action was pending, Progressive settled the personal injury and wrongful death claims that the injured passenger and the deceased passenger's family brought against the Vigils, paying $100,000 to each of them, subject to a reservation of rights. Progressive then amended its complaint to seek reimbursement from the Vigils for this $200,000 in the event that the factfinder determined that the Vigils did not have insurance coverage on the date of the accident.

{6} After about two years of discovery between the parties and cross motions for summary judgment, the district court granted partial summary judgment in favor of Progressive on the coverage issue. It concluded as a matter of law that the Vigils did not have coverage on the date of the accident. After three more years of discovery and

3

numerous motions and other filings by both the Vigils and Progressive, a jury trial was held on Progressive's $200,000 reimbursement claim. The jury found that Progressive was entitled to reimbursement from the Vigils, and the district court entered final judgment in favor of Progressive. The Vigils appealed. In 2009 we reversed the district court's grant of partial summary judgment because the issue of whether the Vigils had coverage involved disputed material facts. *Progressive Cas. Ins. Co. v. Vigil*, Nos. 28,023, 28,393, memo. op. at 5 (N.M. Ct. App. Aug. 18, 2009) (non-precedential). In *Progressive*, we declined to consider the Vigils' argument regarding Progressive's reimbursement claim because we noted the claim would be moot if the jury found that the Vigils had coverage. *Id*. at 6. We remanded the case to the district court for further proceedings and a new trial on the coverage and reimbursement claims. *Id.* at 13.

{7}     While the appeal was pending, the case was reassigned to a different district court judge. After we remanded the case, the Vigils moved for summary judgment on the reimbursement issue. The district court granted summary judgment, concluding as a matter of law that Progressive did not have a right to seek reimbursement for the payments it made to settle the third-party claims, even if the Vigils did not have insurance coverage on the date of the accident.

{8}     Prior to re-trial, the Vigils moved to exclude from evidence the fact that the district court had previously concluded there was no coverage. At the hearing on this motion, the district court stated that any evidence of the previous judge's ruling would be excluded because it was not relevant. The court then entered an order that prohibited Progressive "from introducing evidence, or making any reference before the jury in testimony, exhibits, voir dire[,] or argument, about what any prior [j]udge said, decided[,] or ruled about the facts, evidence or issues here or that a prior [j]udge ruled in a certain way in this case."

{9}     Separate from its decision that the district court's previous rulings would be inadmissible at trial, the district court held another pre-trial conference to address whether Progressive's actions in settling the third party claims against the Vigils would be admitted into evidence. It ruled that, "as a limine matter, . . . issues concerning the payment . . . should not go to the jury." Progressive's counsel asked the district court whether it was "saying that the jury will not be allowed to know that Progressive . . . settled those claims for $100,000 each[.]" The district court replied, "I don't think it's relevant to the issues of whether there was coverage. No, I think that's part of the reimbursement claim [that was disposed of on summary judgment]. No." Progressive's counsel explained that given such a ruling, it could be anticipated

5

that the Vigils were "going to say [Progressive] should have paid these claims and [Progressive] acted in bad faith and [it] left [the Vigils] hanging out there like that." The district court nonetheless entered an order prohibiting "all witnesses and attorneys . . . from mentioning . . . [that Progressive] . . . paid $200,000 to settle [the third-party] liability claims."

{10} The second jury trial was held in 2011. During her closing argument, the Vigils' counsel emphasized, among other things, that "[t]his case ha[d] been going on for nine years" and that, during that time, Progressive "wouldn't even pay for [Martin's] truck, *let alone all the other coverages they should have provided under this policy*." (Emphasis added.)

{11} The jury found that the Vigils had coverage on the date of the accident and Progressive acted in bad faith regarding the resulting coverage claims. In addition to the award of about $40,000 in contract damages under the policy, the jury awarded the Vigils $37,000 in compensatory damages and $11.7 million in punitive damages for their bad faith claim. The district court later awarded the Vigils about $1.4 million in attorney fees and $35,000 in costs under Section 39-2-1.

6

**DISCUSSION**

**A.      Evidence of the Previous Ruling**

{12}      Progressive argues that the district court erred in prohibiting Progressive from admitting any evidence about the previous judge's ruling that the Vigils were not covered under the policy on the date of the accident. Progressive argues that even though this ruling was reversed on appeal because it involved a disputed factual issue, the fact of the ruling "indicate[s] that Progressive did not act in bad faith, and certainly that it should not be liable for punitive damages." We agree.

{13}      "We review the admission or exclusion of evidence for abuse of discretion." *Kilgore v. Fuji Heavy Indus. Ltd.*, 2009-NMCA-078, ¶ 39, 146 N.M. 698, 213 P.3d 1127. Generally, relevant evidence is admissible and irrelevant evidence is inadmissible. *See* Rule 11-402 NMRA. "Evidence is relevant if . . . it has any tendency to make a fact more or less probable than it would be without the evidence, and . . . the fact is of consequence in determining the action." Rule 11-401 NMRA; *see Coates v. Wal-Mart Stores, Inc.*, 1999-NMSC-013, ¶ 37, 127 N.M. 47, 976 P.2d 999. We will reverse a judgment based on the erroneous exclusion of evidence only if "the complaining party on appeal . . . show[s] the erroneous . . . exclusion of evidence was prejudicial." *Id.* (alteration, internal quotations marks, and citation

7

omitted).

{14} In New Mexico, an insurer "acts in bad faith when it refuses to pay a claim of the policyholder for reasons which are frivolous or unfounded." UJI 13-1702 NMRA; *see Am. Nat'l Prop. & Cas. Co. v. Cleveland*, 2013-NMCA-013, ¶ 11, 293 P.3d 954. An insurer "does not act in bad faith by denying a claim for reasons which are reasonable under the terms of the policy." UJI 13-1702; *see also Cleveland*, 2013-NMCA-013, ¶ 13 ( "[A]n insurer has a right to refuse a claim without exposure to a bad faith claim if it has reasonable grounds to deny coverage."). "Where payment of policy proceeds depends on an issue of law or fact that is 'fairly debatable[,]' the insurer is entitled to debate that issue." UJI 13-1702 comm. cmt. (citing *United Nuclear Corp. v. Allendale Mut. Ins. Co.*, 1985-NMSC-090, ¶ 54, 103 N.M. 480, 709 P.2d 649 (Bivins, J., specially concurring)).

{15} We conclude that, in this case, exclusion of the evidence of the previous judge's ruling that there was no coverage was an abuse of discretion, *see Kilgore*, 2009-NMCA-078, ¶ 39, because that evidence was relevant to the factual issue of whether it was reasonable for Progressive to question the Vigils' insurance coverage. We reach this conclusion for five reasons.

{16}     First, whether Progressive acted reasonably in disputing the issue of coverage is a "fact . . . of consequence in determining the action" of bad faith. Rule 11-401(B); UJI 13-1702.

{17}     Second, the fact that the previous judge, as a matter of law, concluded that there was no coverage, albeit mistakenly, "tend[s] to make [the] fact [that Progressive acted reasonably] more . . . probable than it would be without the evidence[.]" *See* Rule 11-401(A). It makes this fact more probable because it supports the notion that the issue of coverage was "fairly debatable." *See* UJI 13-1702 comm. cmt. If the fact of coverage is fairly debatable, then there can be no bad faith because insurers are "entitled to debate" such facts. *Id.*

{18}     Third, cases from other jurisdictions demonstrate that a district court's previous rulings on coverage, even where they were later reversed, are not only relevant to the issue of whether an insurer acted reasonably in disputing coverage, but in some cases are dispositive of that issue. *See, e.g.*, *Lennar Corp. v. Transamerica Ins. Co.*, 256 P.3d 635, 641 (Ariz. Ct. App. 2011) (concluding that a trial court "may decide to admit relevant extrinsic evidence such as [separate] judicial decisions interpreting the policy language" and recognizing that such evidence "may bear on whether these insurers acted reasonably in disputing coverage[]"); *see also Karen Kane Inc. v.*

9

*Reliance Ins. Co.*, 202 F.3d 1180, 1190 (9th Cir. 2000) (recognizing that the insurer's interpretation of coverage was "a reasonable one [for good faith and fair dealing purposes], noting that the district court [had previously] found in [the insurer's] favor" despite partially reversing the summary judgment interpretation of the policy on appeal and remanding back to the district court for further proceedings); *Morris v. Paul Revere Life Ins. Co.*, 135 Cal.Rptr.2d 718, 726 (Cal. Ct. App. 2003) (rejecting the insured's argument that "any court opinion issued after the insurance company made its initial decision to deny coverage could not be considered in determining whether the decision was reasonable" because "the fact that a [different] court had interpreted the law in the same manner as did the insurer, *whether before or after*, is certainly probative of the reasonableness, if not necessarily the ultimate correctness, of its position" (emphasis added)); *but see EOTT Energy Operating Ltd. P'Ship v. Certain Underwriters at Lloyd's of London*, 59 F. Supp. 2d 1072, 1078-80 (D. Mont. 1999) (granting the plaintiff's motion in limine to preclude the insurer from presenting the court's previous decision on coverage, which was later reversed, as evidence of the insurer's reasonableness because "it is clear that, in Montana, the issue whether an insurer had a reasonable basis for denying a claim may not be decided as a matter of law, no matter that the trial court found there was no

coverage[,]" and because the language of Montana's unfair trade practices statute required a showing that the insurer had a reasonable basis to deny the claim *at the time it denied the claim* — not after).[1]

{19}     Fourth, exclusion of this evidence prejudiced Progressive because it concealed an important part of the picture from the jury's view—that Progressive's decision to persist with its coverage position may have been reasonably influenced by the fact that a neutral decision maker had validated this position. *See* 14 Lee R. Russ & Thomas F. Segalla, *Couch on Insurance*, § 204:124 (3d ed. 2005) ("The reasonable person test requires a consideration of all the circumstances of the case which have any significance or probative value in determining whether the insurer has acted properly or not. All of the circumstances of the case when considered in aggregate [can] make it clear that the insurer has not been guilty of any vexatious refusal to pay." (footnotes omitted)).

---

[1] We conclude that the reasoning used in *EOTT Energy Operating Ltd. P'Ship* should not be controlling in this case for two reasons. First, the issue of whether an insurer acted reasonably in denying coverage may not be decided as a matter of law in Montana. Second, the Vigils have not pointed to any language in New Mexico statutes or case law that requires the factfinder to exclusively consider the reasonableness of the insurer's behavior at the time it first decided to file suit challenging coverage and to ignore all of the subsequent circumstances that may have influenced its decision to continue pursuing any challenge to coverage.

{20} Fifth, the Vigils do not argue on appeal that any exceptions to the general rule—relevant evidence is admissible—should apply in this case. *See* Rule 11-402 (providing that relevant evidence is admissible unless "the United States or New Mexico constitution, a statute, these rules, or other rules prescribed by the Court" provide otherwise). Because the district court's ruling is relevant to the Vigils' bad faith claim against Progressive, we do not address any exceptions to the admissibility of the relevant coverage evidence. *See State v. Bent*, 2013-NMCA-108, ¶ 27, 328 P.3d 677 (noting that the appellate courts generally do not address issues that have not been raised on appeal), *cert. denied*, 2013-NMCERT-012, 321 P.3d 126.

{21} By concluding that evidence of the previous ruling was relevant and admissible to support Progressive's position that it did not act in bad faith, we are not further concluding that the previous ruling in Progressive's favor means Progressive's conduct was reasonable as a matter of law. As with all other evidence admitted at trial, it is within the jury's purview to determine how much weight to assign that fact. *See State v. Hudson*, 1967-NMSC-164, ¶ 7, 78 N.M. 228, 430 P.2d 386 ("[T]he jury [members] are the judges of the weight and credibility of evidence."). The Vigils are free to argue that the ruling was reversed and is not dispositive of the question. *See Martinez v. N.M. Dep't of Transp.*, 2011-NMCA-082, ¶ 29, 150 N.M. 204, 258 P.3d

483 (noting that parties are "free to argue the weight of the evidence"), *rev'd on other grounds*, 2013-NMSC-005, 296 P.3d 468. We emphasize that our decision regarding the admissibility of the previous ruling is only relevant to the issue of Progressive's reasonableness under the bad faith claim and has no application to the jury's prior determination of coverage.

**B.      Evidence That Progressive Paid Third-Party Claims**

{22}      Progressive argues that the district court erred when it concluded on summary judgment that Progressive was not entitled to be reimbursed for payments it made to the injured third parties in the event the jury found that there was no coverage. They raise this error because they argue that it led the district court to erroneously prohibit Progressive from introducing evidence or otherwise telling the jury that Progressive made two $100,000 payments on behalf of the Vigils to the injured passenger and the deceased passenger's family under a reservation of rights.

{23}      Before we address the evidentiary issue, we conclude that it is unnecessary to decide the issue of whether Progressive was entitled to reimbursement in the event there was no insurance coverage. The jury found that there was coverage and Progressive does not challenge this jury verdict regarding insurance coverage. Therefore, we affirm the verdict on the issue of insurance coverage. As a result, the

13

issue of whether Progressive would be entitled to reimbursement under any reservation of rights is also moot. Progressive does not argue that any exceptions should be applied regarding our inability to address issues that are moot. *See Bernalillo Cnty. Health Care Corp. v. N.M. Pub. Regulation Comm'n*, 2014-NMSC-008, ¶ 13, 319 P.3d 1284 (noting that an appellate court "does not address moot issues that will have no practical impact on the parties before [it unless the] issues [are] of substantial public interest or . . . are capable of repetition, yet evading review").

{24}     The evidentiary relevancy of Progressive's $200,000 in settlement payments to cover third-party claims against the Vigils is a different matter. We agree with Progressive's argument that the district court abused its discretion when it excluded evidence that Progressive had settled these claims brought against the Vigils. We conclude that such evidence was relevant to the Vigils' bad faith claim.

{25}     The fact that Progressive paid a total of $200,000 to the injured passenger and the deceased passenger's family under a reservation of rights is relevant because it tends to make it less probable that Progressive acted in bad faith over the course of the coverage dispute. *See* Rule 11-401(A). In making these payments, Progressive both compensated the third-party claimants and prevented the Vigils from having to

defend themselves against personal injury and wrongful death claims at the same time that they were litigating the coverage issue with Progressive. The exclusion of this evidence deprived the jury of the whole picture in determining whether Progressive acted in bad faith. *See* Russ & Segalla*, Couch on Insurance*, *supra*, § 204:124. Progressive also apprised the district court of the material nature of this defense evidence and the potential abuse that the Vigils would make of its absence. This warning came to fruition when the Vigils took advantage of this exclusionary ruling during closing arguments and gave the jury the false impression that Progressive had failed to pay anyone during the long nine-year time period that it had taken to litigate the insurance coverage issue. We conclude that it was unfair and an abuse of discretion to exclude evidence that was relevant to rebut the Vigils' claim that Progressive acted unreasonably over the long course of the coverage dispute, especially where this exclusion presented the jury with an incomplete and one-sided picture of Progressive's actions. *Cf. State v. Alberico*, 1993-NMSC-047, ¶ 37, 116 N.M. 156, 861 P.2d 192 (recognizing that it is error to exclude expert testimony where "excluding that evidence vitiates the most basic function of a jury to arbitrate the weight and credibility of evidence"); *see generally United States v. Orr*, No. 92-50235, slip. op. at 2 (9th Cir. 1992) (non-precedential) (holding that the district court

erred when it excluded evidence that was "highly relevant" to material issues in the case). On the basis of these erroneous evidentiary rulings, we reverse and remand to the district court for a new trial on the Vigils' bad faith claim.

{26} We also vacate the award of attorney fees and costs because that statute awards reasonable attorney fees only upon a finding that the insurer acted "unreasonably" in failing to pay the claim. § 39-2-1 ("In any action where an insured prevails against an insurer who has not paid a claim on any type of first-party coverage, the insured person may be awarded reasonable attorney's fees and costs of the action upon a finding by the court that the insurer acted unreasonably in failing to pay the claim."). Because the reasonableness of Progressive's actions in addressing the insurance coverage issue and pursuing a declaratory judgment decision remains to be resolved under the bad faith claim that is now remanded for a new trial, the award of attorney fees and cost under Section 39-2-1 must also be redetermined after the bad faith proceedings are resolved.

**C.     Other Issues**

{27} Because we reverse the judgment and awards concerning the bad faith claim and remand for another trial on that claim, we need not address the other issues that Progressive argues should result in reversal. *See Yeager v. St. Vincent Hosp.*, 1999-

16

NMCA-020, ¶ 6, 126 N.M. 598, 973 P.2d 850.

**CONCLUSION**

{28}    We affirm the judgment in favor of the Vigils as to the issue of insurance coverage and the award of compensatory damages on that issue. We reverse the judgment on the bad faith claim and the compensatory and punitive damages awarded on that claim. We also vacate the award of attorney fees and costs under Section 39-2-1. We remand this case to the district court for a new trial on the bad faith claim and any award of attorney fees and costs under Section 39-2-1.

{29}    **IT IS SO ORDERED.**

_____

**TIMOTHY L. GARCIA, Judge**

**WE CONCUR:**

_____

**RODERICK T. KENNEDY, Chief Judge**

_____

**J. MILES HANISEE, Judge**