**IN THE SUPREME COURT OF THE STATE OF NEW MEXICO**

Opinion Number: 2018-NMSC-014

Filing Date: February 12, 2018

Docket No. S-1-SC-35130

PROGRESSIVE CASUALTY
INSURANCE COMPANY,

      Plaintiff-Respondent,

v.

NANCY COLLEEN VIGIL and
MARTIN VIGIL,

      Defendants-Petitioners.

ORIGINAL PROCEEDING ON CERTIORARI
Alan M. Malott, District Judge

Santillanes & Neidhardt, P.C.
Janet Santillanes
Olivia Neidhardt
Albuquerque, NM

James T. Roach
Albuquerque, NM

for Petitioners

O'Brien & Padilla, P.C.
Daniel J. O'Brien
Albuquerque, NM

Horvitz & Levy LLP
Andrea M. Gauthier
Lisa Perrochet
Burbank, CA

for Respondent

1

**OPINION**

**MAES, Justice.**

**{1}** This case arises from a dispute between insureds, Nancy Colleen Vigil and her stepson Martin Vigil, and their insurance company, Progressive Casualty Insurance Company, as to whether the Vigils' policy was in force at the time of a November 4, 2002, car accident. The parties' dispute has thus far been the subject of two jury trials and two appeals to the Court of Appeals. *See Progressive Cas. Ins. Co. v. Vigil*, 2015-NMCA-031, 345 P.3d 1096 (*Progressive II*), *cert. granted*, 2015-NMCERT-003; *Progressive Cas. Ins. Co. v. Vigil*, Nos. 28,023, 28,393, mem. op. (N.M. Ct. App. Aug. 18, 2009) (non-precedential) (*Progressive I*). In this opinion we limit our review to the propriety of two evidentiary rulings that the district court made prior to the second trial. The Court of Appeals held that the district court erred by excluding evidence at the second trial of (1) a previous judge's summary judgment ruling that the Vigils lacked coverage on the date of the accident, a ruling that had been reversed in *Progressive I*; and (2) Progressive's payment of $200,000 under the Vigils' policy to settle third-party claims while this litigation was pending. *See Progressive II*, 2015-NMCA-031, ¶¶ 15, 24. We reverse the Court of Appeals and hold that the district court acted within its discretion to exclude the evidence under Rule 11-403 NMRA, which permits the district court to "exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." We remand to the Court of Appeals to address the remaining issues that Progressive raised on appeal. *See Progressive II*, 2015-NMCA-031, ¶ 27.

## I.    BACKGROUND

**{2}** At about 1:30 a.m. on November 4, 2002, Martin Vigil was driving a vehicle listed on his parents' Progressive insurance policy when an accident occurred that resulted in the death of one passenger and serious injuries to another. Progressive filed a declaratory judgment action, seeking a ruling that the Vigils lacked coverage at the time of the accident. Progressive asserted that the Vigils' policy expired on November 3, 2002, the day before the accident occurred, and lapsed until 10:29 a.m. on November 4, 2002, about nine hours after the accident occurred. The Vigils counterclaimed, requesting a declaration of coverage and asserting bad faith and other claims against Progressive.

**{3}** While the parties' respective claims were pending, the Vigils were sued by an injured passenger and by the estate of the deceased passenger. Progressive settled these third-party claims by paying the policy limits for liability of $100,000 to each claimant. Progressive made the settlement payments under a reservation of its right to obtain full reimbursement from the Vigils if it was later determined that the Vigils lacked coverage at the time of the accident.

**A.** **The First Trial: Progressive Obtains Favorable Summary Judgment Rulings on the Coverage and Bad Faith Claims and Favorable Jury Verdicts on the Remaining Claims**

**{4}** Prior to the first trial, Progressive filed a motion for partial summary judgment on the issue of insurance coverage. Progressive argued that the Vigils' insurance policy lapsed on November 3, 2002, due to the Vigils' failure to make a timely premium payment and that the policy was not in force when the accident occurred on November 4, 2002. In response, the Vigils argued that they timely made a payment that was due on October 15, 2002, which provided continuous coverage through November 15, 2002. The district court granted Progressive's motion, finding that there was "no genuine issue as to any material fact on coverage and Progressive is entitled to judgment, as a matter of law, that the Vigils [did] not have insurance coverage for the November 4, 2002, accident." The district court also granted partial summary judgment in favor of Progressive on the Vigils' claim that Progressive acted in bad faith by failing to provide coverage. As a result of these partial summary judgment rulings, the jury at the first trial did not consider the issues of insurance coverage or bad faith failure to provide coverage. The jury issued verdicts in favor of Progressive on the Vigils' remaining claims and on Progressive's claim for reimbursement of the $200,000 it paid to settle third-party claims.

**B.** ***Progressive I*: The Court of Appeals Holds That the District Court Erred by Granting Summary Judgment on Coverage and Bad Faith and Remands for a New Trial on Those Claims**

**{5}** The Vigils appealed. The Court of Appeals held that the district court erred by granting partial summary judgment on the issue of insurance coverage. *Progressive I*, Nos. 28,023, 28,393, mem. op. at 2. The Court of Appeals explained that extrinsic evidence outside the four corners of the Vigils' insurance policy revealed an ambiguity concerning whether the Vigils had coverage on the date of the accident. *Id.* at 7-8. The Court of Appeals concluded that "a jury after hearing all the evidence could reasonably and properly conclude that the Vigils were entitled to coverage under their policy." *Id.* at 12. The Court of Appeals (1) reversed the partial summary judgment rulings on coverage and bad faith failure to provide coverage, (2) vacated the award of reimbursement and costs to Progressive, and (3) remanded this case to the district court for a new trial on coverage, the Vigils' bad faith claim, and Progressive's reimbursement claim. *Id.* at 13.

**C.** **The Second Trial: The Vigils Obtain a Favorable Summary Judgment Ruling on Progressive's Reimbursement Claim and Favorable Jury Verdicts on the Coverage and Bad Faith Claims**

**{6}** On remand this case was assigned to a different district court judge. The parties filed numerous pretrial motions, seeking to limit the claims and evidence submitted to the jury at the second trial. The district court granted partial summary judgment in favor of the Vigils

on Progressive's reimbursement claim, ruling as a matter of law that Progressive had no right to seek reimbursement under the terms of the Vigils' insurance policy. The district court held pretrial motion hearings on August 16, 2011, and September 27, 2011, to address additional pending motions. The hearings culminated in an order in limine that prohibited the parties from introducing evidence or making any reference before the jury about (1) any ruling made by a prior judge in the case, (2) Progressive's payment of $200,000 to settle liability claims, (3) Progressive's reimbursement claim against the Vigils, or (4) the seriousness of the accident or the injuries incurred.

{7} The case proceeded to trial on the issues of insurance coverage and bad faith, and the jury found in favor of the Vigils on both claims. The jury awarded the Vigils $37,000 in compensatory damages and $11.7 million in punitive damages. The district court entered a final judgment and awarded the Vigils an additional $40,725 in contract damages and approximately $1.4 million in attorney's fees and $35,000 in costs.

D.   *Progressive II***: The Court of Appeals Holds that the District Court Erred by Excluding Evidence Relevant to the Vigils' Bad Faith Claim and Remands for a New Trial on Bad Faith**

{8} In the second appeal, Progressive argued that the district court erred by excluding evidence of the prior summary judgment ruling that the Vigils lacked coverage for the accident and evidence that Progressive had paid $200,000 to settle third-party claims. Progressive also asserted that (1) the district court erred by granting summary judgment in favor of the Vigils on Progressive's reimbursement claim, (2) erroneous district court rulings individually and cumulatively deprived Progressive of a fair trial, (3) the award of compensatory and punitive damages to Martin Vigil should be reversed for insufficient evidence, (4) the punitive damages are unconstitutionally excessive, and (5) the award of attorney's fees should be reversed.

{9} The Court of Appeals affirmed the verdict in favor of the Vigils on the issue of insurance coverage, noting that Progressive had not challenged the finding of coverage. *Progressive II*, 2015-NMCA-031, ¶¶ 2, 23. The Court of Appeals also affirmed the district court's grant of summary judgment on Progressive's reimbursement claim, reasoning that the claim was moot due to Progressive's failure to challenge the verdict on coverage. *Id.* ¶ 23. But the Court of Appeals reversed the verdict and judgment finding that Progressive acted in bad faith, holding that the district court erred by excluding evidence of (1) the prior summary judgment ruling concerning coverage, and (2) Progressive's payment of $200,000 to settle third-party claims. *Id.* ¶¶ 2, 15, 24. The Court of Appeals explained that both categories of evidence were relevant to whether Progressive acted in bad faith. *Id.* ¶¶ 15, 24. The Court of Appeals also vacated the award of attorney's fees and costs, reasoning that the award should be "redetermined after the bad faith proceedings are resolved." *Id.* ¶ 26. The Court of Appeals declined to reach Progressive's remaining appellate issues and remanded this case to the district court for a third trial on the Vigils' bad faith claim and any award of attorney's fees and costs. *Id.* ¶¶ 27-28.

4

**E. This Court Granted the Vigils' Petition for Writ of Certiorari, and We Reverse the Court of Appeals**

{10}    The Vigils filed a petition for writ of certiorari, asking this Court to consider three issues: (1) whether the Court of Appeals erred by holding that the district court must admit evidence of the reversed summary judgment ruling on coverage, (2) whether the Court of Appeals erred by holding that the district court must admit evidence that Progressive paid $200,000 to settle third-party claims, and (3) whether the Court of Appeals erred by vacating the award of attorney's fees and costs. We granted certiorari under Article VI, Section 3 of the New Mexico Constitution and NMSA 1978, § 34-5-14(B) (1972). We hold that the district court acted within its discretion to exclude evidence of the reversed summary judgment ruling and evidence of Progressive's payment of $200,000 to settle third-party claims. Accordingly, we reverse the Court of Appeals, reinstate the award of attorney's fees and costs, and remand to the Court of Appeals for consideration of Progressive's remaining appellate issues.

**II.    DISCUSSION**

{11}    We analyze the district court's exclusion of evidence under the framework set forth in Rules 11-401, 11-402, and 11-403 NMRA, which address relevance and its limits. Rule 11-402 states the general rule that relevant evidence is admissible unless otherwise provided by constitution, statute, or rule. Rule 11-401 provides that "[e]vidence is relevant if [1] it has any tendency to make a fact more or less probable than it would be without the evidence, and [2] the fact is of consequence in determining the action." Rule 11-403 gives the district court discretion to "exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."

{12}    The district court did not cite Rules 11-401, 11-402, and 11-403 during the pretrial hearings at which the evidentiary rulings were made or in the written orders in limine excluding the evidence. But the record reflects that the parties' arguments and the district court's rulings were guided by the principles set forth in Rules 11-401, 11-402, and 11-403. As described below, the district court considered whether the evidence was relevant and balanced its probative value against a number of countervailing concerns before deciding to exclude the evidence. The parties had sufficient opportunity at the hearings to present argument regarding the admissibility of the evidence and notice of the concerns underlying the district court's rulings. We therefore review the district court's exclusion of evidence under Rules 11-401, 11-402, and 11-403, even though the district court did not specifically cite these rules in support of its rulings. *See Blacker v. U-Haul Co. of N.M., Inc.*, 1992-NMCA-001, ¶ 12, 113 N.M. 542, 828 P.2d 975 (recognizing that admissibility of relevant evidence generally is subject to the Rule 11-403 balancing test); *cf. State v. Gallegos*, 2007-NMSC-007, ¶ 26, 141 N.M. 185, 152 P.3d 828 ("[W]e will affirm the trial court's decision if it was right for any reason so long as it is not unfair to the appellant for

us to do so.”).

**A.** **We Review the District Court's Exclusion of Evidence for Abuse of Discretion and Will Reverse Only If the Appellant Demonstrates Prejudice**

**{13}** The decision to exclude evidence rests within the discretion of the district court, "and the court's determination will not be disturbed on appeal in the absence of a clear abuse of that discretion." *Coates v. Wal-Mart Stores, Inc.*, 1999-NMSC-013, ¶ 36, 127 N.M. 47, 976 P.2d 999 (internal quotation marks and citation omitted). "An abuse of discretion occurs when the ruling is clearly against the logic and effects of the facts and circumstances of the case, is clearly untenable, or is not justified by reason." *State v. Balderama*, 2004-NMSC-008, ¶ 22, 135 N.M. 329, 88 P.3d 845. On appeal, a party "must show the erroneous . . . exclusion of evidence was prejudicial in order to obtain a reversal." *Coates*, 1999-NMSC-013, ¶ 37 (internal quotation marks and citation omitted); *see also* Rule 11-103(A) NMRA ("A party may claim error in a ruling to admit or exclude evidence only if the error affects a substantial right of the party[.]").

**B.** **The District Court Did Not Abuse its Discretion by Excluding Evidence of the Prior Summary Judgment Ruling That the Vigils Lacked Insurance Coverage for the Accident**

**{14}** Prior to the second trial, the Vigils moved the district court to exclude evidence or argument about the prior judge's rulings, including the summary judgment ruling that the Vigils lacked insurance coverage for the accident. The Vigils argued that the previous rulings, which had been reversed on appeal, were not relevant at a new trial and that admitting evidence of the rulings would prejudice the Vigils, confuse the issues, mislead the jury, and waste time. In response, Progressive argued that the prior judge's ruling that the Vigils lacked coverage for the accident demonstrated that the issue of coverage was fairly debatable and, accordingly, that Progressive did not act in bad faith by contesting coverage. The district court granted the Vigils' motion to exclude evidence of prior rulings.

**{15}** On appeal the Vigils argue that the summary judgment ruling was not relevant to the disputed factual determinations that the jury was tasked with making because the ruling was based on the judge's legal interpretation of the language of the insurance policy. The Vigils also contend that Progressive cannot rely on the summary judgment ruling to establish that it was reasonable to contest coverage because the district court issued the summary judgment ruling two years after Progressive decided to contest coverage. Finally, the Vigils assert that evidence of the summary judgment ruling would have overwhelmed the jury's ability to fairly consider the issue of coverage due to the power and influence that judges have over juries. *See State v. Sedillo*, 1966-NMSC-093, ¶ 7, 76 N.M. 273, 414 P.2d 500 (noting that the jury tends to "place great emphasis" on what a judge does and says due to the judge's "power and influence").

**{16}** Progressive argues that the previous district court judge's legal interpretation of the

insurance policy was relevant because it suggested that Progressive was reasonable to contest coverage. Progressive relies on cases from other jurisdictions that have found judicial rulings on coverage relevant to whether an insurer acted in bad faith by failing to provide coverage. *See Karen Kane Inc. v. Reliance Ins. Co.*, 202 F.3d 1180 (9th Cir. 2000); *Lennar Corp. v. Transamerica Ins. Co.*, 256 P.3d 635 (Ariz. Ct. App. 2011); *Morris v. Paul Revere Life Ins. Co.*, 135 Cal. Rptr. 2d 718 (Ct. App. 2003).

**{17}** Progressive's reasonableness in contesting coverage was material to whether Progressive acted in bad faith. The jury was instructed that "[a]n insurance company acts in bad faith when it refuses to pay a claim of the policyholder for reasons which are frivolous or unfounded. An insurance company does not act in fab [sic] faith by denying a claim for reasons which are reasonable under the terms of the policy." *See* UJI 13-1702 NMRA; *see also Sloan v. State Farm Mut. Auto. Ins. Co.*, 2004-NMSC-004, ¶ 18, 135 N.M. 106, 85 P.3d 230 ("Under New Mexico law, an insurer who fails to pay a first-party claim has acted in bad faith where its reasons for denying or delaying payment of the claim are frivolous or unfounded."). The previous district court judge's determination that the Vigils' policy did not provide coverage, although wrong, tends to show that Progressive may have denied the "claim for reasons which are reasonable under the terms of the policy" and not for reasons that "are frivolous or unfounded." *See* UJI 13-1702. The summary judgment ruling therefore had some relevance to the issue of bad faith.

**{18}** Although evidence of the prior summary judgment ruling had some relevance to the Vigils' bad faith claim, the evidence was of limited probative value. First, the summary judgment ruling was a legal determination based on a selective portion of the record—i.e. the language of the insurance policy—whereas the jury was tasked with determining bad faith based on an array of extrinsic evidence, including witness testimony and numerous other documents. *See Progressive I*, Nos. 28,023, 28,393, mem. op. at 6-9; *see also Lennar Corp.*, 256 P.3d at 641 ("Whether the reasonableness of an insurer's coverage position may be determined as a matter of law depends on the nature of the dispute and other factors, including whether extraneous evidence bears on the meaning of the contested policy language."). Additionally, the summary judgment ruling did not provide a reasonable basis for Progressive's initial decision to contest coverage in December 2002 because the summary judgment ruling was not issued until April 2004. *See* 14 Steven Plitt et al., *Couch on Insurance* § 207:4 (3d ed. 1999) ("An insurer does not act unreasonably where it bases its denial of coverage on the express language of its policy and upon the court's *prior* construction of that language." (emphasis added)).

**{19}** The fact-based nature of the coverage dispute in this case distinguishes it from the out-of-state cases on which Progressive relies. In those cases, the determination of coverage turned on a legal interpretation of insurance policy language, and the courts concluded that a judicial ruling on coverage was relevant to the issue of whether the insurer acted reasonably by denying coverage under the terms of the policy. *See Karen Kane Inc.*, 202 F.3d at 1183, 1190 (finding that an insurer's interpretation of the term "occurrence" in a policy was reasonable, noting that the district court had reached the same interpretation);

*Lennar Corp.*, 256 P.3d at 641 ("When, as here, the policies are written on a standard industry form, evidence of how these insurers, other insurers and other courts have interpreted the policy language in other cases may bear on whether these insurers acted reasonably in disputing coverage."); *Morris*, 135 Cal. Rptr. 2d at 726 ("If, as in this case, the coverage issue turns upon analysis of a legal point—and assuming the governing law has not changed in the interim—the fact that a court had interpreted that law in the same manner as did the insurer, whether before or after, is certainly probative of the reasonableness, if not necessarily the ultimate correctness, of its position."). In this case, the issues of coverage and bad faith were fact-based and did not depend solely on a legal interpretation of the Vigils' policy.

**{20}** Having concluded that the prior summary judgment ruling was relevant to the issue of bad faith but of limited probative value, we consider whether the probative value of the evidence was "substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Rule 11-403. At a pretrial motion hearing, the Vigils argued that if the district court allowed Progressive to introduce evidence of the prior summary judgment ruling, the district court would have to allow the Vigils to introduce evidence of the Court of Appeals opinion that reversed the ruling. The Vigils asserted that trying to explain the meaning and effect of these prior legal rulings at trial would confuse the jury and prejudice one or both sides. The district court agreed with the Vigils that trying to explain the "minute processes" of the legal system and appellate law to the jurors would "confuse the heck out of them."

**{21}** It was reasonable for the district court to exclude evidence of the prior summary judgment ruling to avoid confusing the jury, prejudicing either party, or wasting time at trial. To fairly weigh evidence of the summary judgment ruling, which had been reversed on appeal, the jury would have required significant explanation about summary judgment, appellate procedures, the meaning of reversal and remand, and other legal doctrines.

**{22}** Additionally, although evidence of the prior summary judgment ruling on *coverage* was relevant to the issue of *bad faith*, it would have been inherently confusing to admit the evidence at trial because the jury was tasked with determining *both coverage and bad faith*. *See Progressive II*, 2015-NMCA-031, ¶ 21 (emphasizing that the summary judgment ruling was "only relevant to the issue of Progressive's reasonableness under the bad faith claim"). At the pretrial hearing, Progressive suggested that this confusion could be avoided by bifurcating the trial so the jury could determine the issues of coverage and bad faith separately. The district court agreed that bifurcation was an alternative and invited Progressive to file a motion to bifurcate. *See Martinez v. Reid*, 2002-NMSC-015, ¶ 27, 132 N.M. 237, 46 P.3d 1237 (noting that "the decision whether to bifurcate a trial ordinarily rests in the sound discretion of the trial court"). It appears from the record that Progressive never filed such a motion. The district court ultimately permitted Progressive to present evidence of its justification for contesting coverage, including the facts on which the prior summary judgment ruling was based, but not evidence of the ruling itself.

**{23}** We hold that the district court did not abuse its discretion by excluding evidence of the prior summary judgment ruling. The evidence had only limited probative value, and there was a significant danger that the evidence would have confused the jury and unnecessarily protracted the trial with tangential testimony and evidence. *See State v. Guerra*, 2012-NMSC-014, ¶ 36, 278 P.3d 1031 ("[R]ulings on matters of doubtful relevance under Rule 11-402 and the counterbalances to relevant evidence under Rule 11-403 are left to the broad discretion of the district court."); *see also Blacker*, 1992-NMCA-001, ¶¶ 12-13 (holding that the district court did not err by excluding evidence that "would have been subject to explanation and rebuttal" and "would have unduly protracted the trial without good reason").

**{24}** Additionally, while not necessary to our holding that the district court did not abuse its discretion, we conclude that Progressive did not demonstrate the prejudice necessary to obtain a reversal on this issue. *See Coates*, 1999-NMSC-013, ¶ 37. The jury was instructed on four theories of bad faith as follows:

> To establish the claim of bad faith, the Vigils have the burden of proving *at least one* of the following:
>
> 1. Progressive did not deal fairly with the Vigils; or
>
> 2. Progressive refuses to pay the claim for reasons which are frivolous or unfounded; or
>
> 3. Progressive did not act reasonably under the circumstances to conduct a fair evaluation of coverage; or
>
> 4. Progressive failed to act honestly and in good faith in the performance of the insurance contract.

(Emphasis added.) *See O'Neel v. USAA Ins. Co.*, 2002-NMCA-028, ¶ 9, 131 N.M. 630, 41 P.3d 356 (recognizing that a finding of bad faith may be based on conduct separate from refusal to pay). The jury also received UJI 13-1701 NMRA, which described Progressive's duty to the Vigils as follows:

> A policy of insurance is a contract. There is implied in every insurance policy a duty on the part of the insurance company to deal fairly with the policyholder.
>
> Fair dealing means to act honestly and in good faith in the performance of the contract.

*See Salas v. Mountain States Mut. Cas. Co.*, 2009-NMSC-005, ¶ 13, 145 N.M. 542, 202 P.3d 801 ("[W]ith insurance contracts, as with every contract, there is an implied covenant of

9

good faith and fair dealing that the insurer will not injure its policyholder's right to receive the full benefits of the contract." (internal quotation marks and citation omitted)). As discussed above, the prior summary judgment ruling was relevant to whether Progressive acted in bad faith by refusing to pay the Vigils' claim for reasons that were frivolous or unfounded. But based on the jury instructions, it appears that the jury could have found that Progressive acted in bad faith by failing to deal fairly with the Vigils, failing to act reasonably under the circumstances to conduct a fair evaluation of coverage, or failing to act honestly and in good faith in the performance of the insurance contract. The special verdict does not specify the theory of bad faith on which the jury relied. Progressive has not challenged these jury instructions on appeal. *See Am. Nat. Prop. & Cas. Co. v. Cleveland*, 2013-NMCA-013, ¶¶ 14-15, 293 P.3d 954 (recognizing that the legal theories presented in the jury instructions "become the law of the case"). Under these circumstances, Progressive failed to demonstrate that exclusion of evidence of the prior summary judgment ruling affected the outcome of the trial. *See Kilgore v. Fuji Heavy Indus. Ltd.*, 2009-NMCA-078, ¶ 64, 146 N.M. 698, 213 P.3d 1127 (explaining that to obtain a reversal on evidentiary grounds the appellant must "show a high probability that the improper [evidentiary ruling] may have influenced the factfinder" (internal quotation marks and citation omitted)).

**C.      The District Court Did Not Err by Excluding Evidence That Progressive Paid $200,000 to Settle Third-Party Liability Claims**

**{25}**      We next consider whether the district court erred by excluding evidence of Progressive's payment of $200,000 to settle third-party claims. After the district court granted partial summary judgment in favor of the Vigils on Progressive's reimbursement claim, Progressive filed a motion to preclude the Vigils' expert witness from testifying that Progressive acted in bad faith by suing the Vigils for reimbursement. Progressive's motion to exclude evidence focused on the reimbursement claim and did not address the related issue of Progressive's payment of $200,000 to settle third-party claims.

**{26}**      The district court considered Progressive's motion over the course of two pretrial motion hearings held August 16, 2011, and September 21, 2011. At the August 16, 2011, hearing, the Vigils argued vehemently that they should be permitted to introduce evidence of Progressive's reimbursement claim to demonstrate that Progressive acted in bad faith by suing its own policyholders. The Vigils further argued that they should be permitted to introduce evidence that Progressive paid $200,000 to settle third-party claims because that evidence demonstrated that Progressive thought the Vigils had insurance coverage for the accident. The Vigils asserted that admitting evidence of Progressive's settlement payments but not Progressive's reimbursement claim would create the impression that Progressive acted in the interests of its policyholders, which would mislead the jury and prejudice the Vigils' ability to present their bad faith claim. The Vigils argued that evidence of the settlement payments and evidence of the reimbursement claim were "all one part" and "can't be taken apart."

**{27}**      The district court agreed with the Vigils that evidence of Progressive's settlement

10

payments was inextricably intertwined with evidence of Progressive's reimbursement claim. The district court expressed concern that admitting any evidence related to the reimbursement issue would confuse the jury by injecting a legal issue into the case that the court had decided as a matter of law. The district court observed that if the Vigils were permitted to introduce evidence of the reimbursement claim, the court would need to instruct the jury that Progressive was not entitled to reimbursement as a matter of law, which would prejudice the jury against Progressive. The district court worried that the jury would be confused if the Vigils were allowed to argue that Progressive acted in bad faith by denying the Vigils' first-party claim yet paid third-party claims. The district court suggested that the best way to avoid confusing and misleading the jury or prejudicing one or both parties would be to exclude all evidence related to the reimbursement issue.

**{28}**    At the August 16, 2011, hearing, Progressive concurred with the district court that evidence of the reimbursement issue should not be admitted at trial to any extent. Progressive argued that the mere act of seeking reimbursement cannot constitute bad faith, noting that previous judges had concluded that it was legally permissible for Progressive to seek reimbursement. Progressive also explained that it settled the third-party claims due to the severity and details of the accident, and not because Progressive believed that the Vigils had coverage at the time of the accident.

**{29}**    At the beginning of the September 21, 2011, motion hearing, the district court reiterated its proposed ruling to exclude evidence of Progressive's settlement payments and Progressive's reimbursement claim. Progressive asked for clarification regarding the proposed exclusion of the settlement payments. The district court explained that the settlement payments were part of the reimbursement claim and were irrelevant to the issue of coverage because Progressive settled due to the details of the accident, not because Progressive believed there was coverage. The district court also pointed out that admitting evidence of the settlement payments would lead the jury to speculate about the severity and details of the accident, which both parties wanted to avoid. Progressive expressed concern that excluding evidence of its settlement payments would allow the Vigils to argue that Progressive left the Vigils "hanging out there" for ten years without any payment under the policy. The district court acknowledged this concern but observed that there did not appear to be a better way to avoid misleading the jury. The district court worried that if the jury heard evidence that Progressive had already paid claims under the policy, the jury might conclude that this case was unimportant or "legal mumbo jumbo" and might fail to execute its job. The district court conceded that excluding the evidence was not a perfect solution and invited the parties to come up with a better way to balance the competing concerns. Neither party offered an alternative. The district court ultimately concluded that the only way to keep the jury focused and to avoid unfair prejudice, confusing the issues, or misleading the jury was to exclude all evidence concerning Progressive's settlement payments, Progressive's reimbursement claim, and the specific details of the accident.

**{30}**    On appeal, the Vigils contend that Progressive failed to preserve its argument that the district court erred by excluding evidence that Progressive paid $200,000 to settle third-

party claims. The Vigils assert that Progressive made a tactical decision to keep evidence of its settlement payments from the jury because such evidence would have conflicted with Progressive's theme at trial that an insurance company has a fiduciary obligation to protect the premiums paid by its policyholders by denying claims that are not owed. Progressive argues that it sufficiently challenged the exclusion of the evidence and that the district court excluded the evidence on its own initiative.

**{31}** Under the Rules of Appellate Procedure, "[t]o preserve an issue for review, it must appear that a ruling or decision by the trial court was fairly invoked." Rule 12-321(A) NMRA. The preservation rule is intended to ensure that (1) the district court is timely alerted to claimed errors, (2) opposing parties have a fair opportunity to respond, and (3) a sufficient record is created for appellate review. *See State v. Bell*, 2015-NMCA-028, ¶ 2, 345 P.3d 342. In a situation where the district court "feels compelled to exclude evidence sua sponte, the parties should first be informed of the judge's specific concerns. This should be done on the record, before excluding the evidence, and outside the presence of the jury." *See Balderama*, 2004-NMSC-008, ¶ 20. Progressive conceded at a post-trial motion hearing that it never asked the district court to admit evidence of its settlement payments. Although Progressive did not move the district court to admit or exclude evidence of its settlement payments, and therefore did not directly invoke the district court's ruling, the issue of admissibility of Progressive's settlement payments was fairly presented to the district court, and the district explained its proposed ruling and invited the parties to respond at two pretrial motion hearings prior to excluding the evidence. Accordingly, the objectives of the preservation rule were met in this case, and the issue was sufficiently preserved for appellate review.

**{32}** We next examine whether the district court acted within its discretion to exclude evidence of Progressive's payment of $200,000 to settle third-party claims. Neither party disputes that evidence of Progressive's settlement payments was relevant to the coverage and bad faith claims that the jury had to decide at the second trial. Concerning coverage, evidence of the payments would have supported the Vigils' position that their insurance policy was in force at the time of the accident. Concerning bad faith, evidence of the payments would have supported Progressive's position that it acted in good faith by compensating third-party claimants and shielding the Vigils from potential lawsuits while this underlying litigation was pending.

**{33}** Although the evidence was relevant, we hold that the district court did not err by excluding the evidence under Rule 11-403. The district court carefully considered a number of competing concerns in this complex case and invited input from the parties before deciding that the best approach was to preclude evidence of the reimbursement claim and the settlement payments. The district court rationally concluded that admitting the evidence could cause unfair prejudice to one or both parties, confuse the issues at trial by inserting a legal issue that the district court had decided as a matter of law, lead the jury to believe its coverage determination was not important, and cause the jury to speculate about the severity and details of the accident. The district court sought to ensure that the evidence at trial was

12

cohesive so the jury would focus on the issues at stake: (1) whether the Vigils had coverage, and (2) whether Progressive acted in bad faith. We conclude that the district court properly fulfilled the function of gatekeeper by filtering the evidence presented at trial to ensure that the jury's conclusions were "not based on improper considerations or evidence." *See State v. Campos*, 1996-NMSC-043, ¶ 27, 122 N.M. 148, 921 P.2d 1266; *see also Guerra*, 2012-NMSC-014, ¶ 38 (holding that the district court did not abuse its discretion by excluding evidence that "could have led the jury to speculate" about "complicated disputes that did not need to be addressed in [the] case"). We hold that the district court did not abuse its discretion by excluding evidence of Progressive's payment of $200,000 to settle third-party claims.

### D.      The Award of Attorney's Fees Is Reinstated

**{34}**      On appeal to the Court of Appeals, Progressive argued that the award of attorney's fees should be reversed because (1) the award was punitive and therefore duplicative of the punitive damage awards, and (2) the district court erred by not segregating recoverable fees from non-recoverable fees and by using a multiplier to calculate the fees. The Court of Appeals vacated the award of attorney's fees and costs without reaching these arguments because the Court of Appeals reversed the bad faith judgment on evidentiary grounds and remanded for a new trial. *Progressive II*, 2015-NMCA-031, ¶ 26. Because we reverse the Court of Appeals, we reinstate the award of attorney's fees and costs, subject to the Court of Appeals' consideration on remand of Progressive's unaddressed arguments.

### III.     CONCLUSION

**{35}**      We hold that the district court did not abuse its discretion by excluding evidence of either the prior summary judgment ruling on coverage or the liability payments that Progressive made to settle third-party claims. We therefore reverse the Court of Appeals and remand to the Court of Appeals to address the remaining issues that Progressive raised on appeal.

**{36}    IT IS SO ORDERED.**

_____
**PETRA JIMENEZ MAES, Justice**

**WE CONCUR:**

_____
**JUDITH K. NAKAMURA, Chief Justice**

_____
**EDWARD L. CHÁVEZ, Justice**

13

_____

**BARBARA J. VIGIL, Justice**


_____

**SARAH SINGLETON, Judge, sitting by designation**